CASE 76.—PROSECUTION AGAINST A. W. JARBOE FOR KEEPING A GAMING HOUSE.—January 23.

# Jarboe v. Commonwealth

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Defendant convicted and appeals—Affirmed.

1. Gaming—Indictment—Permitting Table Used for Gambling to Be Set Up.—An indictment accusing defendant of suffering and permitting a table used for gambling thereon to be set up, conducted, kept, and exhibited in a designated house, and describing the table as being constructed for the purpose of being used for gambling thereon, and as a table ordinarily used in gambling houses for gambling purposes, and the manner in which it is used, charges a violation of Ky. Stats, 1903, section 1967, punishing whoever shall suffer or permit any table used for gambling to be set up in any house, etc.

2. Same—Evidence—Sufficiency.—Evidence on a trial for permitting a table used for gambling to be set up held to justify a conviction.

3. Criminal Law—Appeal—Verdict—Conclusiveness.—The court of appeals can not reverse a conviction on the sole ground that there is not sufficient evidence to sustain it, and the court is restricted to the inquiry whether or not there is any evidence to show the guilt of accused, and in the absence of errors of law occurring on the trial the court will not disturb a verdict where there is any evidence to support it.

4. Gaming—Suffering or Permitting Table Used for Gambling to Be Set Up—Evidence—Instructions.—Where, on a trial for violating Ky. Stats., 1903, section 1967, punishing whoever shall "suffer" or "permit" any table or contrivance used for gaming to be set up, conducted, kept, or exhibited in any house, etc., the evidence showed that the table set up and exhibited was a crap table, and that it was exhibited on premises in the occupation of accused, the refusal to give an

Jarboe v. Commonwealth.

instruction defining the phrase "**suffer and permit**" was not
erroneous.

5.  Same—Weight   of   Evidence—Statutes—Validity.—The   pro-
vision in Ky. Stats., 1903, section 1967, punishing whosoever
shall suffer any gaming table to be kept or exhibited in any
house, which declares that, after proof of the setting up or
exhibiting of a table in any such house, it shall be presumed
to have been with the permission of the person occupying or
controlling the same, unless the contrary is clearly proved,
states what proof is a prima facie case, and is not invalid.

SWEENEY, ELLIS & SWEENEY for appellant.

SYNOPSIS OF POINTS RELIED ON AND AUTHORITIES.

1. The count of the indictment under which defendant was pros-
ecuted is not good.

2. The evidence on which the conviction was had was wholly
insufficient.

3. Is the law that a defendant charged with crime is entitled
to the benefit of a reasonable doubt in force in Kentucky? (23 Am.
& Eng. Ency. of Law, 2 Ed., p. 948; Sowder & Denny v. Comth.,
8 Bush, 832.)

4. Two fatal defects in the Commonwealth's testimony.

5. The lower court failed to instruct the jury on the whole law
of the case.   (Cook v. Comth., 10 Ky. Law Rep., 222; Trimble v.
Comth., 78 Ky., 176; Heilman v. Comth., 84 Ky. 457, 8 Ky. Law
Rep. 451, 113 Ky. 795.)

6. The court erred to the prejudice of appellant in giving on its
own motion instruction No. 2.   (Runnell v. Comth., 30 Ky. Law
Rep., 491; Marston v. Comth., 18 B. Monroe, 485; Wakefield v.
Comth., 7 Ky. Law Rep., 295.)

7. The lower court erred to the prejudice of appellant in refus-
ing to give instruction "A" asked by defendant.   (Bunnell v.
Comth., 30 Ky. Law Rep., 491.)

8. Defendant's motion for a new trial was overruled on the sole
ground that he did not testify in his own behalf and "clear him-
self."   The lower court in passing on defendant's motion for a
new trial denied him the benefit of a reasonable doubt.

9. The following part of section 1967, Ky. Stats., is unconsti-
tutional:   "After proof of the setting up, conducting, keeping or
exhibiting of such table, bank, machine, contrivance or game in
any such house, boat, float, or place, it shall be presumed to have
been with the permission of the person occupying or controlling

vol. 127—54

Jarboe v. Commonwealth.

the same unless the contrary is clearly proved." (Holloway v.
Comth., 11 Bush, 45; Sowder & Denny v. Comth., 8 Bush, 832.)

10. The court is asked to pass on the constitutionality of the
clause in section 1967, Ky. Stats., quoted in point "X."

N. B. HAYS, Attorney General, and CHAS. H. MORRIS for
Commonwealth.

### CONSTITUTIONALITY OF STATUTE.

Counsel contends that the statute is unconstitutional because
it provides that, after proof of the setting up of the table the
presumption shall be that it was by owner's or occupant's per-
mission. This in no wise is in conflict with our Constitution. It
does not change the law as to the appellant being innocent until
proven guilty. It simply says what proof shall be deemed suf-
ficient to constitute a prima facie case. Just as the possession
of a U. S. revenue stamp by one in a local option territory, is
presumption of guilt, or rather makes a prima facie case. This
statute has been held valid. We can see no reason for saying
that this part of the section is unconstitutional, simply because
it says what proof shall be sufficient to uphold a conviction.

Above and beyond this, however, the court need not waste a
great deal of time on the proposition, for, if the court did not
give instruction No. 2, properly, anʸ error is cured, and counsel's
contention fully recognized · and carried out by the giving of
instruction 3, which is as follows:

"The law presumes the defendant to be innocent until proven
to be guilty to the exclusion of a reasonable doubt, and if the
jury entertain a reasonable doubt from the evidence as to whether
or not the defendant is proven guilty, they should acquit him."

This answers nearly all objections raised, except as to suf-
ficiency of proof, and of this the jury were the judges. On the
whole case, we can not see that prejudicial error has been com-
mitted, and we ask an affirmance.

OPINION OF THE COURT BY WM. ROGERS CLAY, Com-
missioner—Affirming.

The appellant, A. W. Jarboe, was indicted by the
grand jury of Daviess county on December 29, 1906,
for the offense of "suffering and permitting a cer-

tain table, bank, machine, or contrivance ordinarily
used for gambling thereat and thereon to be set up,
conducted, kept, and exhibited in a house and on
premises in his occupation and under his control,"
as prohibited by section 1967, Ky. St. 1903. He was
thereafter tried, convicted, and fined in the sum of
$250. From the judgment entered thereon this appeal
is prosecuted.

The following errors are assigned: (1) The count
of the indictment under which defendant was prose-
cuted is not good. (2) The evidence on which the
conviction was had was wholly insufficient. (3) The
lower court failed to instruct the jury on the whole
law of the case. (4) The court erred in its instruc-
tions to the jury. (5) The court erred to the preju-
dice of appellant in refusing to give instruction asked
for by him. (6) That part of section 1967, Ky. St.
1903, which provides that, "after proof of setting up,
conducting, keeping or exhibiting of such table, bank,
machine, contrivance or game in any such house,
boat, float or place, it shall be presumed to have been
with the permission of the person occuping or con-
trolling the same unless the contrary is clearly
proved," is unconstitutional and void.

Count number 4, under which appellant was prose-
cuted, is as follows: "The grand jury aforesaid, by
the authority aforesaid, accuse the defendant, A.
W. Jarboe, of the offense of wilfully and unlawfully
suffering and permitting a certain table, bank, ma-
chine, or contrivance ordinarily used for gambling
thereat and thereon to be set up, conducted, kept, and
exhibited in a house and on premises in his occupa-
tion and under his control, committed in manner and
form as follows, to wit: Said defendant did, in the
county aforesad and on the ——— day of———, 1906,

and since the 18th day of December, 1905, and before the finding of this indictment, wilfully and unlawfully suffer and permit a certain table, bank, machine, and contrivance ordinarily used for gambling thereat and thereon, to wit, a large table about ten feet long and four feet wide and covered with green cloth, and on which table there were certain lines, dividing the same into sections, and certain numbers printed in said sections and on said table, said numbers being so printed and so placed in said sections on said table so that dice might be thrown on said table and the number or numbers printed on said dice would correspond in some way to some number or numbers printed on said table, and money and property of value be waged on the numbers on said table, and the result of said wagers to be determined by the throwing of said dice on said table, and a more particular description of said table and the game played thereon and thereat and the names of those who played thereon are to this grand jury unknown—said table being constructed for the purpose of being used for gambling thereat and thereon, and being a table, bank, machine, or contrivance ordinarily used in gambling houses and ordinarily used for gambling purposes—to be exhibited in a house and on premises in his occupation and under his control, to wit, an upper room in a house on the north side of Main street, being No. 223, in the city of Owensboro, Ky., near Frederica street, and being the house next adjacent to the saloon building on the corner of Main and Frederica streets, now being used and occupied by the defendant for the purpose of conducting therein a saloon, contrary to the form of the statutes in such cases made and provided, and against the

peace and dignity of the Commonwealth of Kentucky.''

· It will be observed from the foregoing that the indictment substantially charges that the appellant ''wilfully and unlawfully suffered and permitted a certain table, bank, machine, or contrivance ordinarily used for gambling thereat and thereon,'' etc. Then follows a minute description of the table or contrivance, and particularly a description of the manner in which it is used. It charges specifically the room and place where it had been set up or exhibited. Section 1967 makes it unlawful to ''suffer or permit any game or table, bank, machine or contrivance, mentioned or included in section 1960'' to be set up, conducted, kept, or exhibited, etc. The games, table, bank, machine, and contrivance mentioned in section 1960 are keno bank, faro bank, or other machine or contrivance used in betting, whereby money or other thing may be won or lost, or a game of cards, oontz, craps, whereby money or other thing may be won or lost. The indictment describes the table as being constructed for the purpose of being used for gambling thereat and thereon, and as a table, bank, machine, or contrivance ordinarily used in gambling houses and ordinarily used for gambling purposes. These averments bring the indictment within the rule laid down in Com. v. Monarch, 6 Bush, 208, and Ritte v. Com., 18 B. Mon. 35, and sufficiently charge an offense under the statute.

Appellant earnestly contends that the evidence is not sufficient to warrant a conviction. His counsel copy in their brief the evidence of Charles Dibble, and claim that it does not establish the fact that the game which he saw was played after appellant rented or had possession of the building, or that anything

was bet, won, or lost on the game. For the purpose of getting the facts fully before us, we will give the quotation taken from counsel's brief, which is correctly taken from the transcript of evidence, as well as an abstract of the evidence of such other witnesses as we deem it necessary to consider: "Q. Do you know the street number of that house? A. No, sir. Q. Is the house next door to Jarboe's saloon? A. Yes, sir. Q. Were you up in that house before the grand jury met, or before you went before the grand jury? A. Yes, sir. How long before that grand jury? A. I do not know; four or five months, or three or four months. Q. In the summer or fall before that grand jury met? A. Yes, sir. * * *. Q. When you got up there, how many rooms did you notice? A. Just one. Q. Did you go in it? A. Yes, sir. Q. What was going on? A. They were shooting dice. Q. How many men were in there? A. I do not know; a good many. Q. Who was running the game? A. A man by the name of Bush. * * * Q. Was anything being bet on the game? A. They were betting chips. Q. Do you know Bush? A. I know him when I see him. Q. He is a gambler, is he not? A. He was banking that game that night. Q. And did you see Mr. Jarboe about there? A. No, sir. Q. Did you see these men who were playing buy any chips from Bush, or see them cash in? A. I saw one man cash in. Q. With Bush? A.. Yes, sir. * * * Q. You do not remember when you saw any game being played there, do you? A. No, sir; I do not remember the month or date. Q. You do not remember the month or date? A. No, sir. Q. And you do not know who was in charge of the room, or who was in charge of the game? A. I just know that the fellow's name was Bush. Q. You do not know who was

in control of the room? A. No, sir. * * * Q. Was it not four or five months before the Daviess County Fair when you saw that game? A. I could not say. Q. What is your best recollection about it? A. I couldn't exactly say how long it was before the grand jury. Q. I am not asking you about the grand jury. I am talking about the Daviess County Fair. Was it not four or five months before the Daviess County Fair? A. I do not know about that. Q. What is your best recollection about it? A. I do not know. Q. Have you no memory on the subject. A. No, sir. Q. Was it in the summer time? A. I believe it was. Q. Can you give the jury some idea as to how many months it was before the Daviess County Fair? A. No, sir; I cannot. Q. Do you know when the fair was held? A. In October, I think. Q. What part of October? A. I do not remember the date of it. Q. You say you never saw Mr. Jarboe around this room? A. No, sir."

Abe Cohen testified that he rented the premises in question to appellant on July 2, 1906. · Officer Lowney testified that he was a member of the police force of Owensboro; made a raid on the premises occupied by Jarboe; saw him in his saloon, which was downstairs; went upstairs in company with the other officers; found a crap table in one of the rooms; identified the table as the one then in court. Appellant opened the door to let them upstairs. The table looked like it was dirty and had not been used in some time. William Wood testified that he was a house painter; formerly attended bar for appellant; was familiar with the game called "craps." The table on exhibition before the jury was a crap table; never heard of such a table being used for anything else but gambling. Witness explained all the opera-

tions of the game. Appellant had possession of the premises the latter part of the year 1906; took possession some time in August or September. The stuff was moved over there. The table was with the other stuff; thought the table was appellant's. The table in the courtroom was the same table that was moved to the premises in question. Did not think Mr. Jarboe suffered or permitted any one to set up or operate the table after he moved over there. Tom May testified that he was a police officer and member of the crowd that made the raid on Jarboe's premises. In order to get up to the room where the table was, went through Jarboe's saloon, out the back end, and through an alley, and turned to right at end of alley and went up some stairs. Jarboe took the men up there and unlocked the door of the room. Electric lights were turned on from a switch in the saloon. Officer Robbins testified that he was a member of the police force, accompanied the party making the raid, and helped to get the table down. There was some dust on the table. He could not tell whether it had been used or not. It looked pretty dusty.

It will be observed from the foregoing that Charles Dibble testified that he saw a game being played on the crap table in question; that a man by the name of Bush was banking the game; that the parties engaged in playing were betting chips; that he saw one man cash in. True, the witness did not definitely fix the time when he saw the game in operation. His testimony upon this point is indefinite; but he fixes the time at four or five months, or three or four months, before he was before the grand jury. He went before the grand jury some time in December. Even then the longest period fixed by him prior to the meeting of the grand jury did not extend to a time

prior to when appellant rented the premises in question. Furthermore, it appears that a crap table was found on the premises at the time that appellant was in possession of the premises. This crap table was moved over there by appellant. It is shown to have been appellant's table. He had the key to and un-locked the door to the room in which the table was kept. We are of opinion that these facts conduce to show that appellant was in possession of the premises in question at the time the game was played on the table. It has frequently been held that this court has no power to reverse a judgment of conviction in a criminal case upon the sole ground that there was not sufficient evidence to sustain the verdict. In such cases this court is restricted to the single inquiry of whether or not there was any evidence before the jury conducing to show the guilt of the accused. Vowells v. Commonwealth, 83 Ky. 193, 7 Ky. Law Rep 176. Furthermore, this court has time and again declared that it will not, in the absence of errors of law occurring in the trial, disturb the verdict of the jury if there was any evidence to support it. Green v. Commonwealth, 83 S. W. 638, 26 Ky. Law Rep. 1221. There being some evidence conducing to show the guilt of the accused, the verdict will not then be disturbed.

Although counsel claim that the instructions given by the court are erroneous, they do not specify in what respect the error consists. That being the case, we shall not prolong this opinion by setting out the instructions in full. Suffice it to say, however, that we have examined the instructions, and are of opinion that they cover the law of the case. Counsel base their chief complaint, however, upon the failure of the trial court to give the following instruction

offered by appellant: "By 'suffer and permit,' as used in the indictment and in the instructions, is meant that the defendant suffered and permitted the table and game with the knowledge that money or property was being bet, won, or lost thereby or thereat, or the evidence in the case must show some fact proven from which the jury may infer that defendant had such knowledge, and unless they so believe they should acquit the defendant." In support of this contention, counsel rely upon the authority of Bunnell v. Commonwealth, 99 S. W. 237, 30 Ky. Law Rep. 491. It will be observed, however, that the indictment in that case was for the offense prohibited by section 1978, Ky. St. 1903, which provides: "Whoever shall suffer any game whatever at which money or property is won or lost, to be played in a house, boat, or on premises in his occupation or under his control, shall be fined from two hundred dollars to five hundred dollars for each offense." In an indictment under this section this court, in the case cited, said: "We think the court should have instructed the jury defining the words 'suffer' and 'permit' as used in the statute and in the indictment to mean that the defendant must have suffered or permitted the game with the knowledge that money or property was being bet, won, or lost thereby, or that the evidence must show some fact or circumstance from which the jury might infer such knowledge." In that case the gambling was simply upon a game of skill or chance, throwing baseballs at a dummy figure, and not a gambling contrivance per se. It was, therefore, necessary to instruct the jury that the defendant must have suffered and permitted the game with a knowledge that money or property was being bet, won, or lost thereby. In the case at

bar the table itself and the proof thereon show it to be a crap table—a gambling device per se. The offense charged in the indictment is the suffering or permitting of any game or table mentioned or included in section 1960 to be set up, conducted, or exhibited on the premises in appellant's occupation or control; and the mere fact that such a machine or contrivance was set up or exhibited there, is evidence that it was with the permission of the person occupying or controlling the premises. Under these circumstances, it was not necessary to define 'suffer' or 'permit' as embracing the elements of knowledge. After proof of the setting up, knowledge in such cases is presumed, unless the contrary be clearly established.

This last provision of the statute is vigorously assailed on the ground that it is unconstitutional, and also contrary to the long-established rule of law that requires the jury to believe the defendant to be guilty beyond any reasonable doubt. We are unable, however, to find any provision of our Constitution with which the statute in question conflicts. The statute simply says what proof shall be sufficient to constitute a prima facie case, just as, in a prosecution for the unlawful sale of spirituous, vinous, or malt liquors in a local option territory, the possession of a special United States tax stamp for carrying on the business of a retail dealer is prima facie evidence of guilt. Furthermore, this rule has been recognized in this State for over 50 years. In the case of Buford v. Commonwealth, 14 B. Mon. 24, reported in the year 1853, this court said: ''The evidence is clear that a faro bank was set up in a house over which the defendant had control, and although there was no positive testimony that the defendant set it up, or per-

mitted it to be done, the law declares (Rev. St. p. 369) that after the proof of setting up it shall be presumed to have been with the permission of the person controlling or occupying the house.'' While the constitutionality of this act was not then specifically passed upon, yet the court recognized the validity of the act, and made its validity the very basis of its opinion in that case.

Perceiving no substantial error in the record, the judgment is affirmed.